# COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

**LOREN MITCHELL**
**MAGISTRATE IN CHANCERY**

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

August 29, 2025

Geoffrey G. Grivner, Esquire
Kody M. Sparks, Esquire
Buchanan Ingersoll & Rooney PC
500 Delaware Avenue, Suite 720
Wilmington, DE 19801

Andrew L. Cole, Esquire
Nathaniel J. Klepser, Esquire
Austin R. Niggebrugge, Esquire
Cole Schotz P.C.
500 Delaware Avenue, Suite 600
Wilmington, DE 19801

> RE: *Chuang Wei Pan LLC, et al. v. Hiwin Holding LLC*,
> C.A. No. 2025-0402-LM

Dear Counsel:

Before me is a books and records action in which the plaintiffs seek to inspect the books and records of Hiwin Holding LLC under rights they claim are afforded to them in the operating agreement and for the stated purpose of investigating suspected misconduct. Herein, I find that plaintiffs lack standing to inspect the books and records of Hiwin Holding LLC.

## I.  FACTUAL BACKGROUND[1]

This action was initiated by plaintiffs, Chuang Wei Pan LLC and Yaning Li (collectively, "Plaintiffs") against Hiwin Holding LLC (hereinafter, the "Company"). What follows is a brief background of the relevant facts drawn from the parties' stipulations in the pretrial order, seventy-seven exhibits, and the argument and testimony presented at the two-day trial held on August 12, 2025, and August 13, 2025.[2]

### A.  The Parties

Plaintiff, Chuang Wei Pan LLC, is a limited liability company organized under the laws of Delaware, with its principal place of business in the state of New York.[3] The other plaintiff, Yaning Li (hereinafter, "Ms. Li"), was appointed as secretary of the Company's board of directors.[4] Ms. Li is also the managing member

---

[1] Citations to the trial transcript are in the form of "Tr. __". Items filed on the docket are cited as "D.I.__" or as defined when they first appear. The Parties' submitted exhibits 1–77 are cited as "JX__." The lodged depositions are cited as "[Name] Dep. Tr. __" or when appropriate "[Date], [Name] Dep. Tr.__". *See* JX 53–62. I grant the evidence the weight and credibility I find it deserves.

[2] *See* D.I. 38; D.I. 45.

[3] June 19, 2025, Mr. Li Dep. Tr. 16:12–20.

[4] Pretrial Order at ¶ II.6; JX 13 at 2.

and partial owner of Chuang Wei Pan.[5] Ms. Li's father, Li Pu (hereinafter, "Mr. Li"), owns a portion of the membership of Chuang Wei Pan LLC.[6]

Hiwin Holding LLC, the defendant, is a limited liability company organized under Delaware law with its principal place of business in the state of New York.[7] The Company deals in real estate and uses pass through companies to purchase properties.[8] Hiwin Holding LLC was formed by WXG Funding, Inc. (hereinafter, "WXG") and Chuang Wei Pan LLC (hereinafter, "Chuang Wei Pan").[9] WXG is a New York corporation with its principal place of business in New York and is owned by Xiaogang Wang (hereinafter, "Mr. Wang").[10]

At the first board meeting of the Company, held on December 21, 2023, Mr. Li was elected as chairman of the board of directors of the Company and Mr. Wang was elected vice chairman.[11] At the same meeting, plaintiff, Ms. Li, was appointed to serve as secretary of the board of directors.[12] The operating agreement states that

---

[5] June 19, 2025, Mr. Li Dep. Tr. 14:12–19; June 19, 2025, Mr. Li Dep. Tr. 18:3–11.

[6] D.I. 38 ("Pretrial Order") at ¶ II.7; June 19, 2025, Mr. Li Dep. Tr. 18:3–11.

[7] Pretrial Order at ¶ II.1; D.I. 12 at ¶ 7.

[8] Fanggang Wang Dep. Tr. 51:17–53:13; (referencing the purchasing companies operating agreements); *see* JX 14; JX 15.

[9] JX 1 at 1.

[10] Pretrial Order at ¶ II.2; D.I. 35 at 2; D.I. 3 at 3.

[11] Pretrial Order at ¶ II.5; JX 13 at 2.

[12] Pretrial Order at ¶ II.6; JX 13 at 2.

the board of directors was to be made up of five members, two members from Chuang Wei Pan, and three members designated by WXG.[13] At the December 2023 shareholder meeting, the board of directors was established according to the Operating Agreement's guidelines, naming Mr. Wang, Fanggang Wang, and Heli Song as the three nominated members from WXG, and Ms. Li and Mr. Li as the two nominated members from Chuang Wei Pan.[14]

**B.      The Operating Agreement and Holding Structure**

The operating agreement of the Company (hereinafter, the "Operating Agreement") was effective as of January 2, 2024, between WXG and Chuang Wei Pan.[15] Section 5.1 outlines that the board of directors be made up of five directors "three (3) of which shall be designated by WXG Funding Member and two (2) of which shall be designated or changed by [Chuang Wei Pan Member]."[16] Under the Operating Agreement, a manager is "the Persons designated as such in Section 5.7 hereof."[17] The Operating Agreement names Mr. Wang as "the Manager of the Company, who shall have the power to conduct day-to-day management of the

---

[13] JX 1 at § 5.1.

[14] JX 13 at 3.

[15] JX 1 at 1.

[16] *Id.* at § 5.1.

[17] *Id.* at § 1.17.

Company[.]"[18] Section 1.18 defines a member as "each person whose name is set forth on EXHIBIT A, and any Person admitted as a new Member or a substituted Member under this Agreement."[19] It was Mr. Wang's understanding based on conversations with Mr. Li that, Mr. Li would act as the spiritual leader and chairman, and Mr. Wang would assume all operating responsibilities.[20]

Section 7.1 provides for voluntary withdrawal, stating "[a]ny Member shall have the right or power to withdraw voluntarily from the Company, subject to 90 days' notice period to other Members."[21] The Operating Agreement defines voluntary withdrawal as "a Member's attempted dissociation from the Company by means other than by a Transfer or an Involuntary Withdrawal."[22] A member who has voluntarily withdrawn "shall be entitled to receive in liquidation of the Membership Rights, the fair market value of the Member's Membership Rights as of the date of the Voluntary or Involuntary Withdrawal of the Member from the Company, as

---

[18] *Id.* at § 5.7.

[19] *Id.* at § 1.18.

[20] Tr. 104:12–106:6.

[21] JX 1 at § 7.1.

[22] *Id.* at § 1.39.

determined in accordance with the provision of Section 7.4 hereof."[23] Section 7.4 outlines the appraisal process once withdrawal has been entered.[24]

Section 10.2 provides that "[t]he board shall keep or cause to be kept complete and accurate books and records of the Company and supporting documentation of the transactions with respect to the conduct of the Company's business[,]" and provides that "Member[s] shall reimburse the Company for all costs and expenses incurred by the Company in connection with the Member's inspection and copying of the Company's books and records."[25] With a few exceptions outlined in other sections of the Operating Agreement, "all real and personal property acquired by the Company, shall be acquired and held by the Company in its name."[26]

WXG and Chuang Wei Pan each agreed under the operating agreement to "respectively contribute $24 million and $16 Million to the Company promptly after the formation of the Company[.]"[27] Then the members agreed to make a second capital contribution amounting to another $60 million proportionate to each of their

---

[23] *Id.* at § 7.3.

[24] *Id.* at § 7.4.

[25] *Id.* at § 10.2.

[26] *Id.* at § 10.6.

[27] *Id.* at § 3.1.

respective 60% and 40% shares.[28] Section 3.5 of the operating agreement states that in the event a member fails to make a capital contribution a non-defaulting member has the right, but not the obligation to make additional contribution in their place.[29] The Company issued a K-1 form to Chuang Wei Pan for 2024, which shows that their capital contributions are $31,541,701.[30] According to the ledger WXG has made capital contributions amounting to $47,869,642.39.[31]

### C.    The Conflict

The issues orbiting this action are those relating to conflict that arose in August 2024 and messages sent in a group chat thereafter.[32] On August 19, 2024, a board meeting was held in which the board approved preliminarily engineering plans for five projects and agreed to create established entities for strategic investment.[33] At this board meeting discussions were had, promoted by Mr. Li, to appoint a third party to conduct a financial audit of the company.[34] On August 19, 2024, Mr. Li and Mr. Wang sent messages in the group chat about the board's disagreements on the

---

[28] *Id.* at § 3.2.

[29] *Id.* at § 3.5.

[30] JX 22.

[31] JX 18 at 4.

[32] *See* JX 13; JX 8; JX 77.

[33] JX 13 at 12.

[34] June 12 Mr. Wang Dep. Tr. 73:2–24; JX 8 at 2–3.

format and costs of an audit.[35] On August 25, 2024, Mr. Li sent a message expressing his displeasure with Mr. Wang and Fanggang's failure to implement the board of directors resolution in order to pay the audit fees, resulting in the audit not being signed as scheduled.[36] Mr. Li also included in his message to the board the following:

> [T]hese troublesome matters have caused a great deal of agitation and annoyance and have potentially negative impact on the co-operation between the parties concerned at a later stage. Based on the above reasons, it is hereby declared as follows:
>
> 1. According to the shareholders' agreement, our company (Chuang Wei Pan LLC) withdrew from Hiwin Holding LLC, if the company returns the principal and interest at the end of August, it will be settled according to the bank loan interest rate for the same period; Otherwise, our capital contribution will be treated as a shareholder loan, and the parties will re-sign the "loan agreement" at an annual interest rate of 12%.
> 2. After the completion of the above withdrawal, I will formally resign as director and chairman of Hiwan Holding LLC, and I propose that DAPENG LI, YANING LI also resign from the relevant positions of Hiwin Holding LLC, and I will not assume all responsibility for any documents that have not been signed by me before.
> 3. Please return the remaining profits and interests from YANING LI's investment in Star Tower in Long Island City to my account by the end of August. The green mountains do not change, and the green water flows forever. We have a long way to go, and there are still many opportunities for cooperation with each other, and our relationship will be new for a long time!

---

[35] JX 8 at 2.

[36] JX 8 at 3; JX 77 at 2–3.

> How is it? Hope for the approval of shareholders and the
> board of directors!
> Sincerely
> PU LI[37]

Mr. Wang's message in response states "[w]e will study and explore as soon as possible to find a feasible solution; Thank you for your long-term support and care, we do our best to cooperate with your ideas and requirements; I hope we will have better development and cooperation in the future[.]"[38]

The parties dispute whether the August 25, 2024, group chat communications between Mr. Li and Mr. Wang effectuated a voluntary withdrawal.[39] Plaintiffs argue this was Mr. Li threatening withdrawal because of the issues with the audit and the loan taken out with a third-party lender, while the Company argues that this was a voluntary withdrawal of Chuang Wei Pan, effectively removing Plaintiffs inspection

---

[37] JX 8 at 3–4. The parties submitted this portion of the WeChat message from August 25, 2024, twice, with different translations that the Plaintiffs claim effect the meaning and interpretation of what is disputed to either be a withdrawal or a threat of withdrawal. *See id.*; JX 77 at 3; D.I. 41; D.I. 42. For reasons further explained in my analysis section, I do not find the differences between these two translations to be dispositive of the issues to this case and therefore decline to make a ruling over which translation more accurately represents what Mr. Li wrote. I also note that although parties hung a large portion of their arguments on the difference between these two translations, they did not present the Court with any kind of expert witness testimony or caselaw to inform the Court of which translation the Court should rely on. So, as done for all evidence presented thus far, I grant each of the translated versions of the WeChat messages with the weight and credibility I find it deserves.

[38] JX 8 at 4.

[39] Pretrial Order at ¶¶ I and III.5.

rights of the Company along with it.[40] Mr. Wang testified that he and Mr. Li met in person after the August 25, 2024 exchange of messages.[41] Mr. Wang testified that it was not his belief that Mr. Li withdrew in the WeChat messages, but in person when Mr. Wang went to his home.[42]

On August 27, 2025, a few days after the purported in person withdrawal by Mr. Li, Mr. Li sent another message into the group chat with the board exclaiming his concern over audit documents and requesting that Mr. Wang pay off Chuang Wei Pan's 2014 investment profits with attached final accounts ad audit reports and tax payment certificates and demanding he "[g]ive [them] a solution for withdrawing from Hiwin Holding LLC that is controlled and actually operated by [Mr. Wang]!"[43] Mr. Wang responded in the group chat expressing he was unable to determine Mr. Li's true intentions for withdrawal and asking about whether Mr. Li still intended to complete his $40 million capital contributions.[44] At this time Mr. Li had only contributed $31.5 million of his $40 million obligation.[45]

---

[40] D.I. 35 at 17–20; D.I. 36 at 39–49.

[41] June 12, 2025, Mr. Wang Dep. Tr. 76:18–77:4; June 12, 2025, Mr. Wang Dep. Tr. 79:4–25.

[42] June 12, 2025, Mr. Wang Dep. Tr. 77:10–78:20.

[43] JX 8 at 4.

[44] JX 8 at 5.

[45] Tr. 132:19–133:1; *see also* JX 22 (documenting in a K-1 tax form Mr. Li's contributions as of December 31, 2024, at $31, 541,701).

More messages followed between the dates of August 29, 2024, and September 11, 2024, where the board, but primarily Mr. Li and Mr. Wang seemingly discussed the terms of Mr. Wangs withdrawal of Chuang Wei Pan from the Company.[46] On September 9, 2024, Mr. Li and Ms. Li sent a letter indicating,

> [t]he reason for my withdrawal and request for returning in RMB according to your 'impossible' statement. Given the differences in values and philosophies mentioned above, if insisting on auditing to get to the bottom of the problem, it is bound to affect our relationship in decades, and I hold the attitude to settle a quarrel and make peace with the parties involved, having no choice but to give up a stake which is with a victory in sight. After returning to China, I found again a positive news that you had raised nearly RMB ¥500 million by crooking in exchange for 70 million US dollars, which strengthened my simple and easy choice to let you return in RMB. If you still have objections, you can ask the audit and evaluation agency to intervene.[47]

This string of messages, arguing about the audit, the third party loan, and the withdrawal terms, culminated on September 11, 2024, when Mr. Li sent a message into the group chat stating, in relevant part, "[y]ou despise me, the chairman, with an extremely egotistic attitude and forced me to withdraw from our joint venture company in desperation, what kind of face do you have for me to understand and support?"[48] Mr. Li did not submit a formal resignation letter resigning from the board

---

[46] JX 8 at 5–8.

[47] *Id.* at 7.

[48] *Id.* at 8.

of Hiwin Holding.[49] Ms. Li did not submit a formal resignation letter resigning from her role as board secretary of the Company.[50]

### D.     The Demands

On October 1, 2024, the Plaintiffs sent their first demand letter to the Company, informing the Company that they believed they failed to fulfill an obligation from "the August 19 Resolution" when they failed to appoint a third party to conduct a financial audit of the Company.[51] The first demand letter requested the Company follow through with the requested audit and demanded eight categories of books and records, mostly from January 1, 2023 to present for their immediate inspection including: bank statements of all the Company's accounts and all related subsidiaries, ledgers and financial records, including general ledgers, trial balances, and other accounting records documenting all transactions related to the Company's investments, records to identify each member of the Company and its subsidiaries and their respective financial contributions to date, operating agreements for the company and all subsidiaries, investment documentation, tax returns, corporate

---

[49] Pretrial Order at ¶ II.8.

[50] *Id.* at ¶ II.9.

[51] JX 9 at 4.

books and records, and any other records reflecting financial transactions, investments, or agreements.[52]

Defendant answered by letter on October 8, 2024, stating that Plaintiffs were mischaracterizing the agreement from the August 2024 board meeting, that they would not complete an audit until the close of the fiscal year, and by responding to the documents request by stating they would not provide documents that were already in Plaintiffs' possession and asking them to revise their list accordingly.[53]

On October 30, 2024, Plaintiffs sent a second demand, denying the Defendant's allegation that the board had not come to an agreement to use a third party auditor perform an internal review of the Company, and requesting the same eight categories of documents as requested in the first letter but this time providing specific examples of documents in the final "other records" category for production.[54] The Defendant responded to the second demand on November 7, 2024 by providing a subset of the requested documents to Plaintiffs.[55]

On December 5, 2024, a third demand letter reiterating the prior demands for an independent third-party financial audit of the Company and complaining that the

---

[52] *Id.* at 5.

[53] JX 10.

[54] JX 11.

[55] D.I. 12 at ¶31.

records provided thus far by the Company were insufficient.[56] The third demand letter also lists conduct they find suspicious, they believe warrants further investigation, pointing to the real estate purchases being made by pass through entities that are solely owned by Mr. Wang.[57]

On March 17, 2025, Mr. Li sent out a letter to the board notifying them of the first board of directors meeting of 2025.[58] On March 21, 2025, a demand was sent in advance of a meeting with the board, which Mr. Li referred to as a board meeting, that was held on March 26, 2025.[59] In the March 2025 demand letter, Mr. Li states he is sending the letter "as Chairman of the Board of Hiwin Holding LLC on behalf of the Company's Board of Directors and significant shareholder, Chuang Wei Pan, which owns 40% of Hiwin Holding LLC."[60] This letter repeats the concern about the financial transparency of the Company and requests tax documents and bank statements of listed subsidiaries of the Company, WXG's investment in the Company shown through bank statements, the general ledger of the Company, and all relevant agreements and invoices of the Company and Hiwin Holding USA,

---

[56] JX 17.

[57] *Id.* at 4–7.

[58] JX 16 at 2.

[59] JX 5; JX 16 at 4.

[60] JX 5 at 2.

Inc..[61] The documents requested were not provided and Mr. Wang, Fanggang Wang, and Heil Song did not attend the March 26, 2025, board meeting, the only people in attendance were Mr. Li, Ms. Li, and Dapeng Li.[62]

On March 31, 2025, the Plaintiffs sent their fourth and final demand letter to the Defendant.[63] The demand expressly invokes 6 *Del. C.* § 18-305 and demands the Company produce all books and records within five business days.[64] The Plaintiffs requested four categories of documents including: tax filing and related documents, financial books and record, backups for journal entries for proof of WXG's contributions to the company, and agreement and invoices for management fees paid to Hiwin Holding Group USA, Inc..[65] Defendant did not reply to this formal demand.[66]

After Plaintiffs filed their complaint, the parties engaged in further discussion. Defendant sent Plaintiffs a letter on April 21, 2025, informing them that they consider Chuang Wei Pan to have withdrawn voluntarily as of December 31, 2024,

---

[61] *Id.* at 2–3.

[62] JX 16 at 5.

[63] JX 23.

[64] JX 23 at 2.

[65] JX 23 at 3–5.

[66] D.I. 12 at ¶44.

under sections 1.39 and 7.1 of the Operating Agreement and informing him that they would be unable to return the capital contribution because it was not possible to liquidate before the completion of the projects.[67] Plaintiffs responded to the Company's letter on June 10, 2025 arguing that by claiming Chuang Wei Pan had withdrawn when they had not was wrongfully depriving them of their inspection rights and of the financial value of its investment.[68] On July 7, 2025, Mr. Wang signed a resolution asserting Chuang Wei Pan had withdrawn from the Company and confirmed the formal acceptance of Mr. Li's withdrawal of Chuang Wei Pan, confirmed the dissolution of the five person Board, dismissed Ms. Li as the Board's secretary, acknowledged that the Company has a financial obligation to Chuang Wei Pan, and declared Mr. Wang as the sole board member, all effective as of December 31, 2024.[69]

On July 10, 2025, the Plaintiffs filed a motion for status quo order, seeking an Order that this July 7, 2025 resolution from Mr. Wang had no legal effect, which the Court denied on July 22, 2025.[70]

---

[67] JX 7.

[68] JX 51.

[69] JX 76.

[70] D.I. 27; D.I. 30.

### E. Procedural Posture

Plaintiffs filed their complaint to inspect books and records under Section 18-305 of the Delaware Limited Liability Act on April 14, 2025.[71] On May 16, 2025, the Defendant answered the Plaintiffs' complaint asserting affirmative defenses of failure to state a claim, lack of standing, failure to satisfy the requirements of 6 Del. C. § 18-305, claiming that Plaintiffs have ulterior motivation for seeking inspection, and claiming the documents Plaintiffs seek are not necessary and sufficient to Plaintiffs' asserted purpose.[72]

Trial was initially scheduled for one day on July 2, 2025.[73] A teleconference was held on June 24, 2025, in which the Defendant's requested to postpone trial to allow for more time to complete a deposition, and this Court granted the Defendant's request, canceling the July 2, 2025, trial.[74] Trial was rescheduled shortly after that, this time for two days, on August 12, 2025 and August 13, 2025.[75] The two-day trial was held as scheduled and thereafter I took this matter under advisement.[76]

---

[71] D.I. 1.

[72] D.I. 12 at 42–44.

[73] D.I. 18.

[74] D.I. 25.

[75] D.I. 26.

[76] D.I. 45.

## II.   ANALYSIS

Members of a limited liability company, under section 18-305(a) have the right to obtain the books and records from the company "upon reasonable demand for any purpose reasonably related to the member's interest as a member of the limited liability company[.]"[77] These inspection rights afforded to members are "subject to such reasonable standards(including standard governing what information (including books, records and other documents) is to be furnished at what time and location and at whose expense) as may be set forth in a limited liability company agreement[.]"[78] "Inspection rights under Section 18-305 may be expanded or limited by the governing limited liability company agreement."[79]

The parties spent most of the trial discussing whether Plaintiffs had withdrawn such that they no longer held the status of a member or manager with inspection rights. I find that the Plaintiffs effected a withdrawal in accordance with the Operating Agreement and Delaware law. I explain further below.

---

[77] 6 *Del. C.* §18-305(a).

[78] 6 *Del. C.* §18-305(a).

[79] *Gill v. Regency Holdings, LLC*, 2023 WL 4607070 at *9 (Del. Ch. June 26, 2023).

### A. Plaintiffs lack standing to inspect the books and records of the Company due to their withdrawal.

"Entitlement to books and records under Section 18-305 is "status related" — under the statute only a member or a manager may access the company's books and records." [80] "The default rule . . . is that in the absence of an agreement, a partner or member may not withdraw 'prior to the dissolution and winding up' of the entity."[81] "A member may resign from a limited liability company only at the time or upon the happening of events specified in a limited liability company agreement."[82] An implied agreement can modify this "default provision in the [LLC Act] that otherwise prevent a … member from withdrawing before dissolution and winding up."[83] This Court has construed an intent to withdraw through the departing member's "conduct and the remaining member['s] manifest[ation] of his acceptance of that withdrawal."[84] Once a member has withdrawn, they no longer are entitled to the inspection of the company's books and records.[85]

---

[80] *Id.* at *10.

[81] *Levey v. Brownstone Asset Management, LP*, 2014 WL 3811237, at *10 (Del. Ch. Aug. 1, 2014) (quoting 6 *Del. C.* § 18-603; 6 *Del. C.* § 17-603).

[82] 6 *Del. C.* § 18-603.

[83] *5high LLC v. Feiler*, 2022 WL 3136612, at *8 (Del. Ch. Aug. 5, 2022) (quoting *Levey v. Brownstone Asset Management, LP*, 2014 WL 3811237, at *10 (Del. Ch. Aug. 1, 2014)).

[84] *Id.* at *8.

[85] *Greenhouse v. Polychain Funding I LP*, 2019 WL 2290245, at *4 (Del. Ch. May 29, 2019) ("Because he no longer retains an equity interest in the partnership, he is not entitled

"'Delaware courts have interpreted Section 18-305 by looking to cases interpreting similar Delaware statues concerning corporations and partnerships,' such as Section 220 of the Delaware General Corporation Law."[86] This Court may look beyond the formation documents of the company and the financial information relied on to establish an individual's status which qualifies them for inspection as "the Court of Chancery in making its determination of a person's status as a stockholder of record, is empowered to examine all pertinent evidence with the view of reaching a determination of where justice lies."[87]

The Operating Agreement does not indicate any official process for the voluntary withdrawal of a member outside of identifying the right to voluntarily withdrawal, and then the appraisal process of the capital contributions owed after withdrawal has been effectuated.[88] The Operating Agreement places a broad

---

to inspect the partnership's books and records."); *see also Brooks-McCollum v. Emerald Ridge Bd. Of Directors*, 29 A.3d 245, (Del. 2011) (TABLE) ("[W]hen Brooks-McCollum sold her property in Emerald Ridge, she was no longer a member of the Service Corporation and, therefore, had no right to inspect its books and records.").

[86] *Riker v. Teucrium*, LLC, 2020 WL 2393340, at *4 (Del. Ch. May 12, 2025) (quoting *Sanders v. Ohmite Hldgs., LLC*, 17 A.3d 1186,1193.

[87] *Rainbow Nav., Inc. v. Pan Ocean Nav., Inc.*, 535 A.2d 1357, 1359 (Del. 1987) (citation modified); *cf. Pogue v. Hybrid Energy, Inc.*, 2016 WL 4154253, at *3–4 (Del. Ch. Aug. 5, 2016) (holding "that inclusion on a stock ledger is *prima facie* evidence of stock ownership, but . . . the corporate defendant may rebut that presumption by clear and convincing evidence" and questioning, and declining to follow, Rainbow).

[88] JX 1 at §§ 7.1 and 7.4.

definition of Voluntary Withdrawal as "a Member's attempted dissociation from the Company by means other than by a Transfer or an Involuntary Withdrawal."[89] A member's withdrawal entitles them "to receive in liquidation of the Membership Rights, the fair market value of the Member's Membership Rights as of the date of the Voluntary or Involuntary Withdrawal of the Member from the Company[.]"

The parties at trial were in conflict over which translation of the chat messages most accurately portrayed Mr. Li's intentions when sending the withdrawal message but the Court finds this dispute insignificant in the face of the overwhelming evidence pointing to Mr. Li's withdrawal of Chuang Wei Pan and Ms. Li's involvement as members in the Company.[90] Mr. Li began discussions regarding the post-withdrawal process of receiving his capital contributions in alignment with the operating agreement and went on to negotiate the best way for his capital contribution to be returned, offering it be transferred into a shareholder loan at a 12% annual interest rate.[91] There was also testimony that during an in person meeting between Mr. Li and Mr. Wang, Mr. Li formally withdrew Chuang Wei Pan from the Company.[92] In the September 2024 group chat messages with the board, referencing

---

[89] *Id.* at § 1.39.

[90] JX 8; JX 77.

[91] JX 8 at 3.

[92] June 12, 2025, Mr. Wang Dep. Tr. 77:10–78:20.

the discussion Mr. Wang testified to in his deposition, Mr. Li referenced the return of Chuang Wei Pan's investment in a specific project, and although he still referred to himself as chairman, talked about the withdrawal in the present tense and the rights afforded regarding the return of contributions.[93]

The Court acknowledges the imperfect facts in this case, specifically those relating to Mr. Wang continuing to call Mr. Li "chairman" after the alleged withdrawal date and seemingly entertaining the meeting called in March 2025 by Mr. Li, who called the meeting a board meeting seemingly in an official capacity as a member of the board.[94] Mr. Wang explained that his continuing use of the word "chairman" to refer to Mr. Li was a sign of respect and gratitude of his past support of the company.[95] As for the meeting in March 26, 2025, this Court declines to find that the act of Mr. Li attempting to call a board meeting constitutes sufficient evidence to negate his earlier acts constituting withdrawal, especially given that none

---

[93] JX 8 at 6–7 ("The reason for my withdrawal and request for returning the RMB according to your 'impossible' statement. Given the difference in values and philosophies mentioned above, if insisting on auditing to get to the bottom of the problem, it is bound to affect our relationship for decades, and I hold the attitude to settle a quarrel and make peace with the parties involved, having no choice but to give up a stake which is with a victory in sight.").

[94] *See* JX 16.

[95] June 12, 2025, Mr. Wang Dep. Tr. 47:6–49:2; June 12, 2025, Mr. Wang Dep. Tr. 106:5–107:7.

of the board members that remain associated with the Company attended this meeting.[96]

The conduct of Mr. Li along with the broad definition of voluntary withdrawal definition in the operating agreement lend to my finding that Mr. Li's offer to withdraw constituted an attempt to withdraw and then the conversations thereafter both in person and in the board group chat solidified into a full withdrawal sparked by his increased frustration of the financial audit not being performed as he wanted.[97] Since Mr. Li and Ms. Li' status is inherently connected through their appointment to the board as the representatives of Chuang Wei Pan, Mr. Li's withdrawal of Chuang Wei Pan also effectuated a withdrawal of Ms. Li's qualifying status on the board. The Plaintiffs may still wish to pursue the information necessary to value the return of their capital contributions they may be entitled to in accordance with the Operating Agreement, but they no longer have the books and records inspection rights afforded to them in the Operating Agreement and under Section 18-305.[98]

---

[96] JX 16.

[97] JX 1 at § 1.39; JX 8; *see e.g. 5high LLC v. Feiler*, 2022 WL 3136612, at *7 (Del. C Aug. 5, 2022) (finding withdrawal after the party has expressed the intent to withdraw on multiple occasions and then engaged in conduct that an objective observer could draw the reasonable conclusion that he was severing ties with the Company).

[98] *See, e.g. Greenhouse v. Polychain Funding I LP*, 2019 WL 2290245, at *4 (Del. Ch. May 29, 2019) ("Unless the partnership agreement provides otherwise, limiting partners who have withdrawn from the partnership have rights and remedies as creditors of the

### B.     Attorneys' Fees and Costs

In Delaware, courts generally follow the American rule that parties are "expected to pay their own attorneys' fees."[99] A court may shift fees under limited circumstances "for bad faith conduct 'to deter abusive litigation and to protect the integrity of the judicial process.'"[100] This Court does not invoke the bad faith exception lightly.[101] The party seeking bad faith fee shifting must satisfy "the stringent evidentiary burden of producing 'clear evidence' of bad faith."[102] Neither party to this case has engaged in bad faith conduct to warrant the award of bad faith fee shifting. Defendant has prevailed in their theory that Mr. Li effected a withdrawal of Chuang Wei Pan, and therefore their conduct in denying Plaintiffs their request to produce certain documents was warranted.

---

partnership but no longer maintain an equity interest that would entitle them to rights as limited partners.").

[99] *Shawe v. Elting*, 157 A.3d 142, 149 (Del. 2017) (citing *Montgomery Cellular Hldg. Co. v. Dobler*, 880 A.2d 206, 227 (Del. 2005)).

[100] *Tigani v. Tigani*, 2021 WL 1197576, at *25 (Del. Ch. Mar. 30, 2021) (quoting *Shawe v. Elting*, 157 A.3d 142, 149 (Del. 2017)).

[101] *Ravenswood Inv. Co. v. Winmill & Co.*, 2014 WL 2445776, at *4 (Del. Ch. May 30, 2014) ("The bad faith exception is not lightly invoked.").

[102] *Dearing v. Mixmax, Inc.*, 2023 WL 2632476, at *5 (Del. Ch. Mar. 23, 2023) (ORDER) (quoting *Beck v. Atl. Coast PLC*, 868 A.2d 840, 851 (Del. Ch. 2005)).

## III.   CONCLUSION

Accordingly, I do not find it appropriate to grant Plaintiffs request to order the production and inspection of the documents from the Company. This is my final report, and exceptions may be filed in accordance with the expedited schedule under Court of Chancery Rule 144(d)(2).[103]

Respectfully submitted,

*/s/ Loren Mitchell*

Magistrate in Chancery

---

[103] *See* Ct. Ch. R. 144(d)(2) ("A party taking exceptions must file notice of such exceptions within three days of the date of the Final Report[.]").